**PRECISION AIRCRAFT PARTS COM-PANY, Appellant,**

v.

**SOUTHWEST TOOL & DIE COMPANY,**
Appellee.

No. 3262.

Court of Civil Appeals of Texas.

Waco.

June 2, 1955.

Rehearing Denied June 23, 1955

it agreed to sell and defendant agreed to buy properties described as 2499 *AN 837–20 forgings* at a price of $1.75 each, or $4,250.75; that defendant picked up such forgings; that on 21 October 1952 defendant re-delivered to plaintiff the forgings; that plaintiff since has held said forgings for defendant and that defendant has refused to perform its contract, to plaintiff's damage in the amount of $4,250.75.

Defendant answered with a denial that it made the verbal agreement to purchase the forgings, and plead that the only contracts it had with plaintiff were written contracts for the purchase of *finished* AN 837–20 parts; that such *finished* parts were to have been delivered to it by plaintiff not later than 27 November 1951; that plaintiff failed to deliver the finished parts; that the blank forgings were picked up and sent to 3 other machine shops in an effort to get the forgings machined into finished parts to mitigate damages accruing by virtue of plaintiff's failure to machine and deliver the finished parts as it had agreed in writing to do; that the 3 other machine shops determined that because of defects in the forgings they could not be machined into finished AN 837–20 parts; that defendant did not release plaintiff from its obligation to machine and deliver the finished parts; that because of plaintiff's breaches of the written contracts defendant was damaged for loss of profits, having the forgings sent to the 3 machine shops, etc., in the amount of $4,379.64.

By supplemental petition plaintiff plead that it had mutually agreed with defendant to cancel the written contracts for machined parts, and that there was therefore a complete accord and satisfaction; to which defendant plead there was no consideration for the accord and satisfaction.

Trial was before the court without a jury, which entered judgment for plaintiff for $4,250, that defendant take nothing on its cross-action, and that plaintiff tender defendant, 2,427 AN 837–20 forgings; or in the alternative make remittitur of $1.75 for each forging not tendered defendant.

The court filed findings of fact and conclusions of law. Defendant requested the

Carrington, Gowan, Johnson, Walker & Bromberg, Hubert D. Johnson, Dallas, Simon & Simon, Richard U. Simon, Chester B. Collins, Fort Worth, for appellant.

Gragg & Storey, Dallas, for appellee.

McDONALD, Chief Justice.

This was a suit on an oral contract for the purchase price of 2,499 *"AN 837–20" metal forgings,* at $1.75 each. Parties will be referred to as in the Trial Court. Plaintiff, a copartnership composed of Harry Boucher and Harvey Phillips, sued, alleging that on 6 December 1951 an oral contract was made by it with defendant under which

court to file additional findings which the court refused to do.

Defendant appeals to this court, contending: 1) The court erred in not holding plaintiff liable to defendant for a breach of the written contract by which plaintiff was to deliver *finished* AN 837–20 parts to defendant. 2) The court erred in holding defendant liable to plaintiff for the *blank* forgings picked up by defendant on 6 December 1951, as the evidence did not sustain a contract for sale and purchase of such blank forgings. 3) The court erred in holding defendant liable to plaintiff for the blank forgings picked up by defendant on 6 December 1951 because the blank forgings did not conform to prescribed specifications and were practically valueless. 4) Since under plaintiff's own version it was obligated to intercede with its vendor in case of defects and it failed to comply with this part of its agreement, the court erred in permitting plaintiff to recover from defendant for the blank forgings. 5) The court committed reversible error by denying defendant's request for additional findings of fact.

The trial court filed findings of fact and conclusions of law summarized as follows:

## Findings of Fact

1. Plaintiff, on 14 August 1951, by written purchase orders, agreed to furnish defendant 1,000 finished AN 837–20 parts for $4.35 each and 1,100 finished AN 837–20 parts for $3.92 each, delivery date to be 27 November 1951.

2. On 27 November 1951 plaintiff and defendant orally agreed to extend delivery date so as to allow plaintiff to commence delivery the 3rd week in December and complete delivery within 8 weeks.

3. On 27 November 1951 plaintiff had not delivered the parts according to its agreement and was in default in the delivery schedule.

4. On or about 1 December 1951 plaintiff, acting through its partner Harry Boucher, and defendant, acting through its president, R. V. Browning, mutually agreed to cancel the purchase order contract calling for delivery of the finished parts by 27 November 1951.

5. On 6 December 1951 Ed Sostecke, defendant's buyer, acting under direction of its president Browning, agreed to purchase from plaintiff and plaintiff agreed to sell 2,429 blank forgings at a price of $1.75 each; this sale and purchase agreement was conditioned that plaintiff would neither expressly nor impliedly warrant said forgings, but that plaintiff would act as intermediary between defendant and the foundry Lebus Tool Works, in the event said forgings were found to be defective. That the testimony of Boucher, one of plaintiff partners, as to this transaction, is corroborated by the testimony of Sostecke, the defendant's agent and buyer.

6. On 6 December 1951, pursuant to the agreement of that date, defendant sent its truck to plaintiff's place of business and picked up 2,444 forgings and retained possession and control over them until they were re-delivered to plaintiff in October 1952.

7. No purchase order was ever delivered by defendant to plaintiff covering the 2,444 blank forgings.

8. No demand was ever made upon plaintiff by defendant to act as intermediary between it and Lebus Tool Works for any claims arising out of alleged defects in the blank forgings pursuant to the oral agreement of the parties made on 6 December 1951.

9. There was no probative evidence offered by defendant that the blank forgings did not conform to specifications or that said forgings were not machinable.

10. That pursuant to the judgment of the court plaintiff has tendered defendant the 2,429 forgings.

11. The defendant has not paid plaintiff the agreed purchase price of the forgings.

12. That the acceptance by plaintiff of the blank forgings returned by defendant in October 1952 was not intended by plaintiff as a compromise and settlement of its

claim under the 6 December 1951 oral contract; and it has held said forgings for the benefit of defendant, insisting upon payment by defendant under the 6 December 1951 contract.

## Conclusions of Law

1. The contract between plaintiff and defendant by which plaintiff agreed to furnish 2,000 *finished* AN 837–20 parts was cancelled by mutual agreement of the parties on 1 December 1951.

2. Time was not of the essence of the contract by which plaintiff agreed to complete delivery to defendant by 27 November 1951 of the 2,000 finished parts.

3. On 6 December 1951 plaintiff and defendant entered into a binding contract for the sale and purchase of 2,429 blank forgings at $1.75 each; that plaintiff neither expressly nor impliedly warranted the condition of such forgings, but obligated itself to act as intermediary between defendant and Lebus Tool Works if said forgings were found to be defective.

4. That by making the agreement to purchase the blank forgings at $1.75 each on 6 December 1951, and picking up the forgings on such date pursuant to the agreement, defendant waived any cause of action for damages it might have had against plaintiff for plaintiff's failure to deliver on schedule the finished parts to defendant.

Defendant's 1st and 2nd contentions are to the effect that plaintiff is liable to defendant for a breach of the written contract to deliver finished forgings by 27 November 1951; and that the court erred in finding the existence of the oral contract of 6 December 1951, by which defendant purchased the blank forgings from plaintiff at $1.75 each.

A careful review of the statement of facts in this case discloses that plaintiff agreed by purchase order to furnish defendant some 2,100 *finished* forgings by 27 November 1951; that for various reasons plaintiff did not do so and that on 27 November 1951 plaintiff and defendant agreed to an extension of delivery date of some 3 to 4 weeks;

that prior to the arrival of the delivery date as extended, defendant's president Browning became dissatisfied with the new delivery schedule and (thought he) knew where he could get the forgings *processed and finished* in 10 days. Browning himself testified that his buyer Sostecke advised him that he could get the forgings from plaintiff and that *"I found out he had a price from Southwest and I told him that was our only way out and to get the forgings from Southwest."* Sostecke, defendant's buyer, testified that Browning told him to *"Buy the forgings—let's ship them to California"* (California being the place that Browning thought could *finish* the forgings in 10 days). The record further reflects that both plaintiff partner Boucher and defendant's buyer Sostecke testified that Sostecke telephoned Boucher, and agreed on behalf of defendant to buy the forgings for $1.75 each. Sostecke further testified that defendant's president Browning okayed the purchase. The forgings were picked up from plaintiff by defendant's truck on 6 December 1951—the same day that the oral agreement to purchase was entered into.

Defendant's 3rd and 4th contentions are to the effect that it could not be liable for the blank forgings because they did not conform to prescribed specifications, were valueless—and that plaintiff had not performed its obligation to intercede with Lebus Tool Co.—original furnisher of the forgings—in the event the forgings were defective.

A review of the record reflects not only that plaintiff sold such forgings to the defendant without warranty, express or implied, but also that the defendant has failed to prove by probative evidence that the forgings did not conform to prescribed specifications. In fact, the record is overwhelming that defendant purchased the blank forgings from plaintiff *as was*. Mr. Browning, defendant's president, was in a hurry to have them "finished," and he knew of a place where this could be done in 10 days. Further, there is no evidence that any demand was ever made on plaintiff by defendant to act as intermediary between it and Lebus Tool Works.

From the foregoing we hold that there is ample evidence to sustain the trial court's findings that the contract between plaintiff and defendant was cancelled by mutual agreement; that a binding contract was entered into between the parties whereby defendant purchased the forgings from plaintiff upon the conditions found, and that defendant took possession and held said forgings pursuant to the contract; that the forgings were not defective, and that the trial court was correct in rendering judgment for plaintiff for the agreed purchase price.

Defendant's 5th contention is that the trial court committed reversible error by denying defendant's request for additional findings of fact. Without reciting the additionally requested findings, we hold that the findings filed by the court cover the material disputed issues and that no error was committed in refusing to make the additional findings.

All of defendant's points are overruled and the judgment of the trial court is affirmed.